## Jones *v.* The Western Assurance Company.

*Insurance—Marine insurance—Negligence—Question for jury.*

In an action upon a policy of marine insurance for the loss of a steamboat where it appears that the policy excepted loss caused by the gross negligence of owners or master, and there is some evidence that the tiller ropes were not in proper condition at the time of the accident, and the evidence shows conduct on the part of the master from which an inference of negligence might be drawn, the question of whether the owners and the master were guilty of gross negligence is for the jury, and a verdict and judgment for plaintiff will be sustained.

A policy of marine insurance provided that there should be no abandonment as for total loss unless the injuries sustained should be equivalent to fifty per cent of the agreed value of the vessel. The policy also provided that in case of loss the assured should use every effort for the safeguard and recovery of the vessel, and after recovery should cause it to be repaired, but in case of neglect or refusal of the assured to do so, the company might do it for account of the assured. In an action on the policy the court charged that if the expense of repairing the boat was equal to or greater than the one half of its value, then the owners had the right to abandon it, and the company could take possession of the boat, repair it and sell it or do what they pleased with it. The court also charged that only the actual amount spent in repairs of the vessel should be considered in calculating the fifty per cent of the total valuation of the vessel. *Held*, that the instructions were proper.

Argued Oct. 26, 1900.   Appeal, No. 140, Oct. T., 1900, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1898, No. 412, on verdict for plaintiffs in case of James Jones et al., trading as James Jones & Sons v. The Western Assurance Company.   Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ.   Affirmed.

Assumpsit on a policy of marine insurance.   Before White, P. J.

The facts are fully stated in the opinion of the Supreme Court.

Defendant presented the following points:

1. Under all the testimony the verdict must be for the defendant.  *Answer:* Refused. [1]

2. If the jury believe under the testimony that Captain L. M. Clarke, who was in charge of the boat at the time of the accident, did not use proper care in shoving the boat off, after she had struck the pier, and that Captain Clarke broke the tiller rope, as shown by his own testimony, then the verdict must be for the defendant.  *Answer:* Affirmed as to the first part of the point; refused as to the latter part, about the breaking of the tiller rope, as explained in the charge. [2]

3. If the jury believe under the testimony that the owners of the boat abandoned her as a total loss without making any attempt to ascertain the injuries to the boat, or the amount necessary to put the boat in the same condition as before the accident, then the verdict must be for the defendant.  *Answer:* Refused, if the plaintiffs in good faith gave notice of abandonment, honestly believing that the cost of repairs would exceed fifty per cent of the agreed value, and the defendant company, in pursuance of that notice, took possession of the boat, raised and repaired it. [3]

4. If the jury believe that plaintiffs first agreed to assist in the repair of the boat, as testified to by Captain Daugherty, and then afterwards refused to pay their pro rata of the cost of repairs, the verdict must be for the defendant.  *Answer:* Refused.  First, the testimony of Captain Daugherty is controverted ; second, the point ignores the question of abandonment ; third, it ignores the question of tender after the repairs were made. [4]

5. The court is requested to charge the jury that if they believe that there was an abandonment by the plaintiff, they can only recover in this suit for their losses in proportion as the sum herein insured, $3,000, bears to the agreed value in this policy, $8,000; that is, they can only recover three eighths of the amount required to put the boat in the condition it was at the time of the wreck. *Answer :·* Refused. [5]

The court charged in part as follows :

[If the assured unreasonably refused to join with the defendant in raising that boat when it could be raised and repaired at a less expense than fifty per cent of the agreed value, that is, less than $4,000, then the plaintiffs cannot recover the whole of this policy, and I will say to you that if that is the case here, there can be no recovery at all. [6]

Verdict and judgment for plaintiff for $3,540. Defendant appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*Albert York Smith*, for appellant, cited Wallace v. Thames & Mersey Ins. Co., 22 Fed. Repr. 66.

*W. B. Rodgers*, with him *C. G. McIlvaine* and *G. W. Wurzell*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1901 :

This is an action of assumpsit brought to recover $3,000, the full amount of a policy of marine insurance issued to the plaintiffs by the defendant on the steam towboat "Dauntless." The policy is dated January 7, 1897, and ran for one year. There was another policy on the boat of like amount and covering the same period, issued by the Eureka Fire and Marine Insurance Company of Cincinnati, Ohio. The policy issued by the defendant company fixed the value of the boat by agreement of the parties at $8,000. It was a stern wheel vessel and was used for towing purposes in the Ohio, Monongahela and Allegheny rivers. In the early morning of March 8, 1897, the "Dauntless" was taken to McLaughlin's landing, on the Pitts-

burg side of the Allegheny river, and about 300 or 400 yards above the exposition buildings in the city of Pittsburg. It lay there for two hours, and about 6:30 o'clock it backed out from the landing and started down the river with an empty flat in tow. The river was high and the current was strong from the Pittsburg shore towards the Allegheny side of the river. As the boat was proceeding down the river and about 500 feet above the Union bridge which spans the Allegheny river at the Point, the pilot, Capt. Clark, discovered that it was in a bad position. To avoid a collision with the bridge pier he stopped and began to back it up the river and started to change the rudders. As the boat was backing, the tiller line by which the rudders are controlled by the pilot, parted and it became helpless. In a couple of minutes it struck the Union bridge pier, the second pier from the Pittsburg side. The boat struck on her right side and a little back of the middle. After lodging there a while, the engineer, by direction of the pilot, shoved the vessel off the pier and it drifted down the river. It soon filled up pretty well with water, and after going 200 or 300 feet fell on the starboard side and sank in about fourteen or fifteen feet of water at the junction of the three rivers. This was about 7 o'clock in the morning. The plaintiffs placed watchmen in charge of the boat who remained there a few days until the defendant company took charge of it. The company was at once notified of the loss and of the abandonment of the vessel. Proofs of loss were also duly furnished.

The plaintiffs, claiming that the boat was a total loss, refused to assist in raising it. The defendant took charge of the boat, raised and repaired it, and on June 29, 1897, tendered it to the plaintiffs, claiming that it had been restored to a better condition than it was just previous to the accident of March 8, 1897. At the same time, the defendant presented the plaintiffs with a bill incurred in raising and restoring the " Dauntless," accompanied by a demand for payment. The plaintiffs declined to receive the boat or to pay the bill, and brought this action.

The defendant company denied its liability to the plaintiffs for the amount of the policy or any part of it, and interposed various defenses at the trial of the cause.

The risks assumed by the company under the policy were the unavoidable dangers of rivers, of fires, and of jettisons, that

should cause loss or damage to the vessel. There were specifically excepted from these risks "all perils, losses or misfortunes arising from or caused by the gross negligence, recklessness or wilful misconduct of the owner, master, officers or crew of the vessel." It was claimed on behalf of the defendant that the loss of the boat came within these exceptions; that the owners were guilty of gross negligence in not providing a proper and safe tiller rope; that the pilot was guilty of gross negligence in trying to change the rudders while the boat was backing, and in directing the engineer to shove it off the pier. These questions have been settled by the verdict. The learned judge below submitted them in a correct and very careful charge, and the jury has found against the contention of the defendant. The court after referring to the testimony bearing upon the subject told the jury that "if the owners were guilty of gross negligence in not providing proper machinery or a proper tiller rope, or if those in charge of the boat were guilty of gross negligence with reference to the collision or in getting the boat off the pier, then there can be no recovery."

It is further claimed that the plaintiffs neglected their duty by failing to comply with clause five of the policy after the vessel had sunk. This clause provides that in case of loss, the assured shall use every effort for the safeguard and recovery of the vessel by employing such means as can be obtained for that purpose, and after recovery shall cause it to be repaired, but in case of the neglect or refusal of the assured to do so, then the company may do it for account of the insured. In such case the company after taking from the cost the deductions allowed in the policy in case of a partial loss, shall contribute to the cost of the repairs in the proportion that the sum insured bears to the agreed value. It is provided in the policy that the acts of the assured or assurers in saving or repairing the property insured shall be held not to be a waiver or acceptance of the abandonment or of an acknowledgment of liability by the assurers. The learned court below thought that this clause should be construed in the light of, and in connection with, clause eight of the policy which provides that there shall be no abandonment as for a total loss, on account of the vessel grounding, unless the injury sustained (exclusive of the cost of raising, docking and any other general average charges) shall be equiv-

alent to fifty per cent of the agreed value of the vessel.   We think the court was clearly right in this view of the contract. He charged the jury that if the expense of repairing the boat was equal to or greater than the one half of its value, then the plaintiffs had the right to abandon it and the company could take possession of the boat, repair it and sell it or do what they pleased with it, it would be their property; but that "if the assured unreasonably refused to join with the defendants in raising that boat when it could be raised and repaired at a less expense than fifty per cent of the agreed value, that is, less than $4,000, then the plaintiffs could not recover the whole of this policy; and I will say to you that if this is the case here then there can be no recovery at all."   With a slight inaccuracy in regard to the expense of raising the vessel, hereafter referred to, we think the learned judge correctly determined the rights and liabilities of the parties under these clauses of the policy, and submitted the questions of fact arising thereon properly to the jury.

The day of the accident the plaintiffs notified the defendant of their loss, and the following day filed with them a marine protest.   They placed a watch in charge of the wreck, and in three or four days the defendant's adjuster assumed control of it.   The company raised and repaired it and tendered it to the plaintiffs, alleging that the boat was then in a better condition than before it was injured.   The plaintiffs denying that such was its condition refused to accept it.   The learned judge in his charge said there was no provision in the policy directly providing for a tender back to the assured of the repaired vessel, but notwithstanding the view thus entertained, he submitted to the jury to determine whether the boat was repaired so as to be as good as it was before the accident, and instructed the jury that if it was and the plaintiffs refused to accept it, there could be no recovery.   The plaintiffs might have objected to this part of the charge as holding them to the performance of an obligation not contained in their contract, but surely the defendant has no right to complain.

The next question that need be noticed is, whether there was a total loss as contemplated in the eighth clause of the policy which would justify an abandonment of the vessel.   As we have seen, clause eight of the policy provides that when the injury

sustained (exclusive of certain costs) is equal to fifty per cent of the value of the vessel, a total loss shall exist justifying an abandonment. At the request of defendant as contained in its fifth point, the court charged that this clause "must be interpreted as meaning that only the actual amount spent in repairs of the vessel shall be considered in calculating the fifty per centum of the total valuation of the vessel." The defendant's contention is that the repairs amounted to $3,339.65 as shown by its bill presented with the tender to the plaintiffs of the "Dauntless" after the vessel had been repaired. It was claimed by the defendant that with these repairs the boat was in a better condition than it was prior to the accident. On the other hand, this contention was met on the part of the plaintiffs by the allegation that when the vessel was tendered to them it was not in as good condition as it was prior to the accident, and to put it in such condition would require an additional expenditure of at least $2,700. This would make, as claimed by the plaintiffs, the cost of repairing largely in excess of the $4,000, fifty per centum of the value of the vessel. Each side presented testimony to sustain its contention in this respect, but it is not necessary to refer to it in detail as we are of opinion that under it, the jury was justified in finding against the defendant.

The sixth point alleges error by the court in including the expense of raising the boat in the fifty per cent of its value required to make the total loss. That part of the charge is not accurate, but any error that might have arisen from it was cured by the statements in other parts of the charge that the vessel could not be abandoned unless the cost of the repairing exceeded one half the value of the boat, and the positive statement in the defendant's fifth point, which was affirmed by the court, that clause eight of the policy "must be interpreted as meaning that only the actual amount spent in repairs of the vessel shall be considered in calculating the fifty per cent of the total valuation of the vessel."

To summarize: The plaintiffs alleging that it was impracticable to repair the boat within the terms of the policy, refused to assist in raising and repairing it, and abandoned the vessel. The company raised and repaired it, and claiming that the repairs were less than one half of its value, tendered the boat to the plaintiffs and demanded payment of the plaintiff's propor-

tion of the cost of raising and repairing. Under proper instructions the jury has found that the cost of the repairs did exceed the one half of the value of the boat, and hence under the provisions of the policy there was a total loss. The plaintiffs were therefore justified in their action in abandoning the boat, and of course in claiming the full amount of their policy. The questions raised on the trial by the learned counsel for the defendant company were all submitted to the jury by the court with substantially correct instructions. The offer to explain the policy by parol testimony was properly refused. We see no error in the record requiring us to reverse the court below.

The assignments of error are overruled and the judgment is affirmed.